IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANGELA RAMOS, | ) | 4:05CV3056 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| THE STATE OF NEBRASKA and | ) | |
| JON C. BRUNING, Nebraska Attorney | ) | |
| General, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Angela Ramos ("Ramos"), has filed a § 1983 action against the State of Nebraska and the Nebraska Attorney General, seeking declaratory relief only. The defendants have moved to dismiss the action. Their motion will be granted.

## I.  BACKGROUND

Following a series of hearings in the County Court of York County, Nebraska, Ramos's parental rights to five minor children were terminated pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7).[1]  (Amended Complaint, ¶¶ 6-7.)  Ramos appealed the

---

[1] Section 43-292 provides, in relevant part:

The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

. . .

(2) The parents have substantially and continuously or repeatedly

termination order to the Nebraska Supreme Court, claiming, among other things, that she was denied effective assistance of counsel and that her due process rights were

---

neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;

. . .

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination;

(7) The juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months;

. . .

Neb. Rev. Stat. Ann. § 43-292 (LexisNexis 1999).

Section 43-247(3)(a), which is referenced in the preceding statute, provides the juvenile court in each county with jurisdiction of:

Any juvenile . . . who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile.

Neb. Rev. Stat. Ann. § 43-247(3)(a) (LexisNexis Supp. 2004).  Unless a separate juvenile court has been established in a county, "the county court sit[s] as a juvenile court[.]" Neb. Rev. Stat. Ann. § 43-245(5) (LexisNexis Supp. 2004).

violated because her attorney did not file a timely appeal from an earlier County Court order that changed the permanency objective of Ramos's rehabilitation plan from family reunification to termination of her parental rights. ( Id., ¶¶ 9, 13.)  The Nebraska Supreme Court affirmed the termination order on February 28, 2003, and denied rehearing on April 23, 2003.  See In re Interest of Joshua R., 657 N.W.2d 209 (Neb. 2003).  (Id., ¶ 11.)

Ramos alleges that the Nebraska Supreme Court rejected her appeal without considering whether she had a due process right to effective assistance of counsel or whether she was prejudiced by her attorney's failure to perfect an appeal from the County Court's order changing the rehabilitation plan.  (Id., ¶¶ 11, 13.)  She also complains that "[t]he [Nebraska Supreme] Court's conclusion that any violation of her due process rights with respect to counsel's untimely appeal of the change in plan was attenuated by her opportunity to fully contest the merits of the termination proceeding was arbitrary and capricious, . . .."  (Id., ¶ 13.)

Ramos requests this court to declare:  (1) "that the termination of her parental rights was procured in violation of her constitutional right to due process of law[;]" (2) "that in the event that the State seeks to terminate her parental rights . . . [to] her remaining children, the State . . . must provide[ ] her with effective assistance of counsel[;]" and (3) "that the State of Nebraska cannot terminate the parental rights of a party unless such party is provided a procedure for challenging a termination on the grounds that the party was not afforded effective assistance of counsel[.]" (Id., pp. 4-5.)  Such declaratory relief allegedly is sought under authority of 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  (Id., ¶¶ 4, 5.)

Named as defendants in this action are the State of Nebraska and the Nebraska Attorney General, Jon C. Bruning, who is sued in his official capacity only.  Ramos alleges that she was deprived "of her fundamental right to the possession, custody and control of her natural born children, in violation of her rights to due process of law

and equal protection of the law" because the defendants (1) "permitt[ed] the termination of [parental] rights to occur when the record evidence showed that the [plaintiff's] court appointed attorney failed to timely appeal a court order changing the objective of the proceeding from reunification to termination," and (2) "fail[ed] to provide any procedural remedy or safeguard in the process . . . [to protect against] errors, neglect, or unreasonable actions by counsel." (Id., ¶ 14.)

Ramos alleges that she "was prejudiced as the result of her attorney's unreasonable and ineffective presentation of the case against termination" because (1) "termination of parental rights could be based solely on the fact that the children had otherwise been in foster care for 15 of the last 22 months,"[2] and (2) "a successful appeal would have precluded the case moving toward termination." (Id., ¶ 15.) Concerning her request for prospective relief, Ramos simply alleges that she "has other minor children that could be subject to further action by the State to terminate her parental rights as to those children." (Id., ¶ 17.)

The defendants have moved to dismiss the plaintiff's action, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), and, in support of their motion, argue that: (1) the State is immune from suit under the Eleventh Amendment; (2) the action is barred by the Rooker-Feldman doctrine; (3) Ramos does not have standing; and (4) the action is barred by the Supreme Court's holdings in Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997). As will be discussed in some detail below, I generally agree with the defendants' first three arguments, but not the fourth, and I conclude that the plaintiff's action must be dismissed for lack of subject matter jurisdiction. Although not specifically argued by the defendants, I also find that no equal protection claim is stated.

---

[2] The five children were removed from Ramos's care on November 30, 1999, and placed in protective custody with the Nebraska Department of Health and Human Services. They were still in foster care when the termination hearing was held on December 20-21, 2001. See In re Interest of Joshua R., 657 N.W.2d at 210.

## II.  DISCUSSION

"A court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint.  If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate.  Because this is a facial rather than a factual challenge to jurisdiction, [the court must] determine whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the plaintiff."  Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted).  However, a district court may also make factual determinations when deciding a Rule 12(b)(1) motion.  See Faibisch v. University of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002) (district court's fact findings concerning availability of relief sought by plaintiff reviewed for clear error).

A court may take judicial notice of public records when considering a motion to dismiss, including a Rule 12(b)(6) motion.[3]  See Stahl v. United States Dept. of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003); Faibisch, 304 F.3d at 802-03. Accordingly, I have considered the Nebraska Supreme Court's published opinion in In re Interest of Joshua R. that is cited in the plaintiff's amended complaint and discussed in the defendants' brief.  See Conforti v. United States, 74 F.3d 838, 840 (8th Cir. 1996) (federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue).

With respect to the defendants' Rule 12(b)(6) motion, I must accept the allegations in the complaint as true and draw reasonable inferences in favor of the

---

[3] A district court may also consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1), without converting the motion into one for summary judgment.  See Harris v. P.A.M. Transport, Inc., 339 F.3d 635, 638 n. 4 (8th Cir. 2003).  In this case, however, no evidentiary materials have been presented.

nonmoving party, dismissing only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.  See Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d 1052, 1062 (8th Cir. 2005).  Although the pleading standard is liberal, the plaintiff must allege facts—not mere legal conclusions—that, if true, would support the existence of the claimed constitutional violations.  See id.

### A.  Eleventh Amendment Immunity

"The Eleventh Amendment generally bars suits brought against the states in federal courts."[4]  In re SDDS, Inc., 97 F.3d 1030, 1035 (8th Cir. 1996).  "The immunity recognized by the Eleventh Amendment extends to both suits for monetary damages and those for declaratory or injunctive relief."  Id.  "In Ex parte Young, 209 U.S. 123 (1908), however, the Supreme Court established a fundamental exception to the Eleventh Amendment's immunity doctrine . . . [by recognizing] that suits may be brought in federal court against state officials in their official capacities

---

[4] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S.C.A. Const. Amend. XI (West 1987).

"The Eleventh Amendment provides states, and state agencies, with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens.  Eleventh Amendment immunity, however, is not absolute.  The Supreme Court has recognized, among other exceptions, that a state may waive its sovereign immunity by consenting to suit."  Doe v. Nebraska, 345 F.3d 593, 597 (8th Cir. 2003) (citations omitted).

6

for prospective injunctive relief to prevent future violations of federal law."  Id. (quotation and citation omitted).

Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983.  See Williams v. Missouri, 973 F.2d 599, 600 (8th Cir. 1992); Quern v. Jordan, 440 U.S. 332, 345 (1979).  See also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (a state is not a "person" within the meaning of section 1983).[5]  It is also well-settled that the State of Nebraska has not waived its immunity from liability in civil rights actions.  See Poor Bear v. Nesbitt, 300 F. Supp. 2d 904, 913-14 (D.Neb. 2004) (citing cases).  Thus, regardless of the relief sought,[6] the plaintiff cannot maintain a § 1983 claim directly against the State of Nebraska.[7]  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996) (the relief

_____

[5] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .."  42 U.S.C.A. § 1983 (West 2003).

[6] Ramos alleges that she "seeks only declaratory relief under 28 U.S.C. § 2201 for claims arising under the United States Constitution, and not monetary, compensatory or punitive damages."  (Amended Complaint, ¶ 5.)

[7] Federal district courts have original jurisdiction "of any civil action authorized by law to be commenced by any person . . . [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . .."  28 U.S.C.A. § 1343(a)(3) (West 1993).  Federal district courts also have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C.A. § 1331 (West 1993).  These jurisdictional statutes do not abrogate the states' Eleventh Amendment immunity, either.  See Standing Rock Sioux Indian Tribe v. Dorgan, 505 F.2d 1135,

sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.)

However, "State officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief." Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). See also Will, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985)).  The plaintiff's § 1983 claim therefore may proceed against the Nebraska Attorney General to the extent that she seeks prospective declaratory or injunctive relief, but not otherwise.

Most of Ramos's allegations are concerned with the conduct of past judicial proceedings in the County Court of York County, Nebraska, and in the Nebraska Supreme Court, and she specifically seeks the entry of a declaratory judgment providing "that the termination of her parental rights [as ordered and affirmed in those state proceedings] was procured in violation of her constitutional right to due process of law."[8]  Ramos argues that such a declaratory judgment may be entered

---

1137-38 (8th Cir. 1974) ("[W]here properly invoked, the Eleventh Amendment bars the action regardless of the statutory basis of jurisdiction"); Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 714 F.2d 946, 950 (9th Cir. 1983) ("Neither 28 U.S.C. § 1331, nor § 1343, nor 42 U.S.C. § 1983 contains an expression of Congressional intent to abrogate [the states'] immunity. Therefore none operates to lift the Eleventh Amendment bar.").

[8] Ramos also seeks forward-looking declarations providing that she must receive effective assistance of counsel in any future proceedings to terminate her parental rights to her other children and that, in general, there must be a procedure whereby a parent's ineffective assistance of counsel claim will survive a termination hearing.  As against the Nebraska Attorney General, these requests for prospective relief are not barred by the Eleventh Amendment.

8

because "[u]nder the requested relief, a favorable ruling by this court could have no effect on the decision of the Nebraska Supreme Court upholding the termination of her parental rights." (Filing 42, p. 4 (emphasis omitted).) However, a declaratory judgment is not available if it would "serve no useful purpose as a final determination of rights." Green v. Mansour, 474 U.S. 64, 73 & n. 2 (1985); Public Service Com'n v. Wycoff, 344 U.S. 237, 247 (1952). This court cannot declare that the plaintiff's constitutional rights were violated during the state court proceedings unless such a declaration will somehow alter the status quo.

Obviously, an award of damages is not possible. See Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). It is not evident, though, that the plaintiff's parental rights could not be reinstated consistent with the Eleventh Amendment. For example, several circuits have held requests for reinstatement of employment to be prospective relief. See Meiners v. Univ. of Kansas, 359 F.3d 1222, 1232-33 (10th Cir. 2004); Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002); Doe v. Lawrence Livermore Nat. Lab., 131 F.3d 836, 839-41 (9th Cir.1997); Williams v. Kentucky, 24 F.3d 1526, 1544 (6th Cir.1994); Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir.1986); Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir.1985), modified, 793 F.2d 457 (1986).

The difference between permissible and impermissible relief is "the difference between prospective relief on one hand and retrospective relief on the other." Quern, 440 U.S. at 337. Although the difference is not always easy to ascertain, see Edelman, 415 U.S. at 667 ("As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex Parte Young will not in many instances be that between day and night."), "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official

9

directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation." Papasan v. Allain, 478 U.S. 265, 277-78 (1986). "Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." Id. at 278. "On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." Id.

Reinstatement is considered an appropriate remedy for unlawfully discharged state employees "because termination without due process is the very unlawful act at issue; reinstatement pending a hearing thus 'serves directly to bring an end to a present violation of federal law[.]'" Whalen v. Massachusetts Trial Court, 397 F.3d 19, 30 (1st Cir. 2005) (quoting Papasan and distinguishing reinstatement from compensatory restoration of service credits for the period of unemployment), cert. denied, ___ S.Ct. ___, 2005 WL 241211, 74 USLW 3050 (No. 05-76) (Oct. 3, 2005). In the present case, however, the alleged due process violation concerns a failure by Ramos's court-appointed attorney to file a timely appeal from an order that was entered even before the State of Nebraska moved to terminate Ramos's parental rights.[9] As held by the Nebraska Supreme Court, Ramos's due process claim ignores

---

[9] The procedural history of the termination proceeding was detailed by the Nebraska Supreme Court in In re Interest of Joshua R., as follows:

> On December 1, 1999, five separate petitions were filed, one as to each of the Angela's children, alleging that the subject child was a juvenile as described under Neb.Rev.Stat. § 43-247(3)(a) (Reissue 1998). The five proceedings were consolidated below and on appeal. An adjudication hearing was held on December 16. In the [county] court's December 17 order, each child was adjudicated a juvenile within the meaning of § 43-247(3)(a). . ..   Angela did not appeal the

10

"that she was given notice and a full opportunity to litigate the issue of the termination of her parental rights when the State's termination motions came on for trial on December 20 and 21, 2001." In re Interest of Joshua R., 657 N.W.2d at 215. In other words, Ramos has not alleged an ongoing due process violation that might

---

adjudication order.

A hearing was held on January 27, 2000, and a disposition order was entered on February 7, setting forth a rehabilitation plan for Angela and spelling out a number of goals, . . .. The permanency objective was reunification. Angela did not appeal the disposition order establishing the rehabilitation plan. Periodic dispositional hearings were held. In orders filed on May 24 and December 15, the court continued the original plan and goals with minor changes.

A permanency hearing was held on December 13, 2000, and continued on January 18 and February 13, 2001. In an order filed on April 26, the court determined that based upon the evidence presented at the hearing, . . . it was "inappropriate to continue to consider reunification with Angela and that the proper permanency plan [was for] the state [to file] a petition for termination of parental rights as to each of the [children]." . . .

On May 29, 2001, Angela filed a notice of appeal in each of the cases, seeking to appeal the court's April 26 order changing the permanency objective from reunification to termination of parental rights. The Nebraska Court of Appeals dismissed the appeals as untimely, having been filed more than 30 days after the entry of the order appealed from. See In re Interest of DeChelly R. et al., 10 Neb.App. ---- (Nos. A-01-685 through A-01-689, July 31, 2001).

On May 17, 2001, the State filed motions for termination of parental rights in each of the five children's proceedings. . . .

. . .

On December 20, 2001, and continuing on December 21, the State's motions for termination came on for hearing. Angela was present and represented by counsel. A total of 13 witnesses testified. Documentary evidence was received.

657 N.W.2d at 211-13.

be remedied by reinstatement of her parental rights pending a new hearing.  See, e.g., Sonnleitner v. York, 304 F.3d 704, 718-19 (7th Cir. 2002) (no ongoing due process violation where demoted state employee ultimately was granted a full and fair hearing).  True, Ramos has alleged that the Nebraska Supreme Court's denial of her due process claim was arbitrary and capricious, but, as will be discussed next, only the United States Supreme Court has jurisdiction to review that ruling.

## B. Rooker-Feldman Doctrine

"The Rooker-Feldman doctrine provides that, 'with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments.' Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)).  District courts have no authority to review state court decisions, 'even if those challenges allege that the state court's action was unconstitutional,' Feldman, 460 U.S. at 486, 103 S.Ct. 1303, because 'federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court,' Lemonds, 222 F.3d at 492 (citations omitted)."  Gisslen v. City of Crystal, 345 F.3d 624, 627 (8th Cir. 2003).  "The doctrine bars federal courts from hearing cases brought by the losing parties in state court proceedings alleging 'injury caused by the state-court judgment and seeking review and rejection of that judgment.'"  Mosby v. Ligon, 418 F.3d 927, 931 (8th Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S.Ct. 1517, 1526 (2005)).  "[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994).  "In other words, original federal jurisdiction over state-court judgments is reserved to the Supreme Court." Heartland Academy Communiy Church v. Waddle, 335 F.3d 684, 689 (8th Cir. 2003).

12

The doctrine thus precludes federal district court jurisdiction over federal claims that are "inextricably intertwined" with claims of the state court action. Gisslen, 345 F.3d at 627. A federal claim is inextricably intertwined if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring). The claim, however, "is not precluded if it is 'separable from and collateral to the merits of the state-court judgment.'" Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir. 1999) (quoting Pennzoil, 481 U.S. at 21 (Brennan, J., concurring)). The claim will also not be precluded if litigants do not have a "reasonable opportunity to raise their federal claims" before the state court. Prince v. Arkansas Bd. of Examiners in Psychology, 380 F.3d 337, 341 (8th Cir. 2004). "[F]ederal plaintiffs cannot be said to have had a reasonable opportunity to raise their federal claims in state court where the state court declines to address those claims and rests its holding solely on state law." Simes v. Huckabee, 354 F.3d 823, 829 (8th Cir. 2004).

In this instance, the Nebraska Supreme Court addressed the plaintiff's federal due process claim. The Court "assum[ed] without deciding that the April 26 order [changing Ramos's rehabilitation plan] was an appealable order . . . [and] conclude[d] that [she] was not denied due process." In re Interest of Joshua R., 657 N.W.2d at 214. Although Ramos alleges that "[t]he Supreme Court denied [her] claim without determining whether she had a 'due process' right to 'effective assistance of counsel'" (Amended Complaint, ¶ 11), the Court specifically stated that "due process is required in cases involving termination of parental rights, and we analyze Angela's claim under due process principles." Id. at 215. As described by the Court, Ramos "claim[ed] in effect that because her counsel filed an untimely appeal of the court's order changing the permanency objective from reunification to termination of parental rights, she was denied due process." Id. This assignment of error was held to be without merit because, despite the untimeliness of the first appeal, Ramos

thereafter was provided a full and fair hearing regarding the State's motions for termination of her parental rights.  See id.

Ramos now wants this court to find that the Nebraska Supreme Court's holding is wrong, and, in this regard, she argues that the dismissal of the first appeal was unfairly prejudicial, notwithstanding the conduct of the subsequent county court proceedings.  However, only the United States Supreme Court has jurisdiction to entertain such an argument.  See 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . where any title, right, privilege, or immunity is specifically set up or claimed under the Constitution or the treaties or statutes of . . . the United States.").

Insofar as Ramos seeks a declaratory judgment that the termination of her parental rights was procured in violation of her due process rights, the Rooker-Feldman doctrine clearly prevents this court from exercising jurisdiction over such claim.[10]  Ramos, of course, also requests declarations that she must be provided effective assistance of counsel if the State moves to terminate her parental rights with respect to her other children, and that the State must provide a procedure for challenging termination orders on the basis of ineffective assistance of counsel.

_____

[10] The plaintiff's pleadings also contains stray allegations that she was denied equal protection.  (Amended Complaint, ¶¶ 14, 17.)  The Nebraska Supreme Court did not address an equal protection claim in In re Interest of Joshua R., but there are no facts alleged in the present action to indicate the existence of a viable equal protection claim.  Ramos claims that she was deprived of "her fundamental right to the possession, custody and control of her natural born children," (Amended Complaint, ¶ 14), but she has not alleged "that some government action caused her to be treated differently from others similarly situated."  Gilmore v. County of Douglas, 406 F.3d 935, 937 (8th Cir. 2005) (threshold showing for equal protection claim).  Ramos's conclusory allegations are insufficient to state an actionable equal protection claim.

14

Whether the Rooker-Feldman doctrine applies to bar these requests for prospective relief is less clear, but, based upon the parties' arguments, I find that it does.

The Rooker-Feldman doctrine bars both straightforward and indirect attempts by a plaintiff to "undermine state court decisions." Prince, 380 F.3d at 340 (quoting Lemonds, 222 F.3d at 492.   If the federal claims "so closely implicate the decision of the state court," the federal suit is barred even if the plaintiff is not directly asking the district court to overturn the state court judgment.   Gisslen, 345 F.3d at 629 (quoting Lemonds, 222 F.3d at 493).   "Deciding whether Rooker-Feldman controls this case 'requires determining exactly what the state court held' to ascertain whether granting the requested federal relief would either void the state court's judgment or effectively amount to a reversal of its holding.'" Lemonds, 222 F.3d at 493 (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)) (footnote omitted).

While a declaration from this court that "in the event that the State seeks to terminate [Ramos's] parental rights of (sic) her remaining children, the State of Nebraska must provided (sic) her with effective assistance of counsel" (Amended Complaint, p. 4) on its face would not seem to undermine the Nebraska Supreme Court's decision in In re Interest of Joshua R., the plaintiff states in her brief that her declaratory judgment action "attacks the premise of the prior state court rulings as to whether she has a due process right to 'effective' assistance of counsel." (Filing 42, p. 5.)  This statement is inconsistent with Ramos's allegation that the Nebraska Supreme Court failed to decide whether she had a due process right to effective assistance of counsel (see Amended Complaint, ¶ 11), but, notably, the defendants also imply that the Court's decision in In re Interest of Joshua R. was premised on the non-existence of such a constitutional right (stating that the Court held "that there is no right to effective assistance of counsel in a civil proceeding and that the Plaintiff was not denied due process in the termination hearings.").  (Filing 40, p. 1).

Actually, the Nebraska Supreme Court merely "observe[d] that juvenile proceedings are civil rather than criminal in nature, and that we have previously stated that an individual has no constitutional right to effective assistance of counsel in a civil proceeding." Id., 657 N.W.2d at 214 (citations omitted). The Court further stated that "we have ruled that a statutory right to the appointment of counsel does not give rise to an ineffective assistance of counsel claim in a civil postconviction case." Id. at 215 (citation omitted). As a final statement of law, however, the Court "acknowledged that due process is required in cases involving termination of parental rights," and thus it "analyze[d] Angela's [ineffective assistance of counsel] claim under due process principles." Id. at 214-15.

If, as appears to be the case, Ramos is contending that the Nebraska Supreme Court wrongly held there is no due process right to effective representation of counsel in juvenile court proceedings for the termination of parental rights, or at least not at the stage of the proceedings where Ramos claimed that her due process rights were violated, then the Rooker-Feldman doctrine applies. While I do not read the opinion in In re Interest of Joshua R. in the same way as the parties, since I think the Nebraska Supreme Court simply determined that Ramos was not prejudiced by her attorney's error, I am not authorized to reverse any holding that the Court arguably made regarding Ramos's past entitlement to effective representation of counsel. [11]

_____

[11] A few months ago, in In re Interest of Heather R., 694 N.W.2d 659, 664-65 (Neb. 2005), involving a juvenile adjudication proceeding, the Nebraska Supreme Court explained, and expanded upon, its rationale in deciding Ramos's case, stating:

> We recently stated in a case involving termination of parental rights, that "juvenile proceedings are civil rather than criminal in nature" and that "an individual has no constitutional right to effective assistance of counsel in a civil proceeding." In re Interest of Joshua R. et al., 265 Neb. 374, 381, 657 N.W.2d 209, 214 (2003). See, also, In re Interest of Azia B., 10 Neb.App. 124, 626 N.W.2d 602 (2001). In In re Interest of Joshua R. et al., our rationale stemmed from the fact that the right to

16

Similarly, if the result would be to undermine the decision in <u>In re Interest of</u> <u>Joshua R.</u>, then I am unable to declare "that the State of Nebraska cannot terminate

---

counsel and the corresponding right to effective counsel derived from the Sixth Amendment are limited to "criminal prosecutions." We further observed that "a statutory right to the appointment of counsel does not give rise to an ineffective assistance of counsel claim in a civil postconviction case," 265 Neb. at 382, 657 N.W.2d at 215, and we reasoned that a similar result was indicated in juvenile proceedings. Our rationale for this reasoning was the fact that appointment of counsel in a civil case where such appointment is not required by the federal Constitution need not be accompanied by a corresponding entitlement to effective counsel. See <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (stating that because there is no constitutional right to counsel in postconviction proceedings, there is no claim of ineffective assistance of counsel). Although the instant case involves an adjudication, we note that the U.S. Supreme Court has held that while the federal Constitution does not require that counsel be appointed for parents in every parental rights termination proceeding, due process might require appointment of counsel in certain parental rights termination proceedings. <u>Lassiter v. Department of Social Services</u>, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).
. . .

Although we did not find entitlement to an ineffective assistance of counsel claim in <u>In re Interest of Joshua R. et al.</u>, 265 Neb. 374, 657 N.W.2d 209 (2003), we nevertheless noted that due process is required in cases involving termination of parental rights. <u>Id.</u> . . . The fundamental fairness concept of the Due Process Clause of the 14th Amendment informs our assessment of the protections which are appropriate in juvenile matters. See <u>In re Gault</u>, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

As is evident from the claims on appeal in this case, as a practical matter, due process claims challenging the adequacy of representation by counsel in juvenile cases commonly encompass assertions that in a criminal case might be characterized as "ineffective assistance of counsel" claims. . . .

17

the parental rights of a party unless such party is provided a procedure for challenging a termination on the grounds that the party was not afforded effective assistance of counsel." (Amended Complaint, pp. 4-5). It may be, for example, that Ramos is seeking a declaration that the Nebraska Supreme Court erred as a matter of law in concluding that due process was satisfied because "she was given notice and a full opportunity to litigate the issues of the termination of her parental rights when the State's termination motions came on for trial[.]" In re Interest of Joshua R., 657 N.W.2d at 215. Even though the requested relief is framed as a general proposition of law, it is directed straight at the Nebraska Supreme Court's holding that Ramos was not prejudiced by the untimely appeal from the rehabilitation plan change.

I therefore conclude that the plaintiff's action against the Nebraska Attorney General is in all respects barred by the Rooker-Feldman doctrine. However, even if the requests for prospective declaratory relief are not "inextricably intertwined" with the In re Interest of Joshua R. holding, jurisdiction is still lacking because there is no justiciable case or controversy under Article III of the United States Constitution.

## C.  Standing

To show Article III standing, a plaintiff must demonstrate (1) an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood, as opposed to mere speculation, "that the injury will be redressed by a favorable decision." In re Operation of Missouri River System Litigation, 421 F.3d 618, 637 (8th Cir. 2005) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

> The Supreme Court's decision in Feldman drew a distinction for
> purposes of 28 U.S.C. § 1257 between actions seeking review of a state
> court's disposition of a specific claim and actions "mount[ing] a general
> challenge to the constitutionality" of state legislation. Feldman, 460

18

U.S. at 482-83, 103 S.Ct. 1303.  Only the Supreme Court has jurisdiction over the former, while the latter can be heard by federal district courts in which jurisdiction is otherwise proper.  Id.

But Feldman does not relieve [the plaintiff] of the requirement that she demonstrate Article III standing, . . ..  Because Feldman dealt primarily with the definition of judicial proceedings for the purposes of the Rooker-Feldman doctrine, the opinion "should not be read as implicating the standing of a litigant seeking declaratory or injunctive relief."  Grendell v. Ohio Supreme Court, 252 F.3d 828, 837 (6th Cir.2001).  Such litigants still must satisfy the normal requirements of Article III standing.  See id. at 836-38; Landers Seed Co. v. Champaign Nat'l Bank, 15 F.3d 729, 732 (7th Cir.1994); Facio v. Jones, 929 F.2d 541, 543-45 (10th Cir.1991).

Article III of the United States Constitution confines the jurisdiction of federal courts to justiciable cases and controversies.  U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  Such cases and controversies include only those claims that allege some "injury in fact" redressable by a favorable judgment.  Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 124 S.Ct. 2301, 2308, 159 L.Ed.2d 98 (2004).  To satisfy this "injury in fact" requirement, a plaintiff seeking prospective relief against future conduct of defendants who caused injury in the past must show that she faces "a real and immediate threat that she would again suffer similar injury in the future."  Park v. Forest Serv. of the United States, 205 F.3d 1034, 1037 (8th Cir.2000) (internal quotations and brackets omitted); see O'Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).  In addition to satisfying Article III standing requirements, litigants must stay within "prudential limitations" on the exercise of federal-court jurisdiction.  Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).  One such limitation is a rule that parties "generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties."  Id. at 499, 95 S.Ct. 2197.

Mosby, 418 F.3d at 932-33 (footnote omitted).

Ramos's allegation that she "has other minor children that could be subject to further action by the State to terminate her parental rights as to those children" is insufficient to show a "real and immediate threat of repeated injury." O'Shea, 414 U.S. at 496.  Even if it might be assumed that the State of Nebraska is likely to take some action for the protection of Ramos's other minor children, there is no reason to suppose that Ramos will not be appointed counsel as required by Nebraska law,[12] or that her counsel will not be effective.  Any prospective relief sought by the plaintiff in this case necessarily entails "speculation and conjecture," and for that reason is not available.  See id. at 497.

## D.  Heck and Edwards

While I conclude that the plaintiff's action must be dismissed for the reasons discussed above, I will briefly consider one final argument presented by the State of Nebraska and the Nebraska Attorney General.  The defendants argue that:

> Habeas proceedings in federal court provide a remedy for criminal defendants whose convictions were imposed under circumstances where counsel for the habeas petitioner is determined to be have been "ineffective."   The Plaintiff herein is attempting to interject this purely criminal law remedy into a civil action involving alleged

---

[12] Neb. Rev. Stat. Ann. § 43-279.01 (LexisNexis 1999), provides, in part:

(1) When the petition alleges the juvenile to be within the provisions of subdivision (3)(a) of section 43-247 or when termination of parental rights is sought pursuant to subdivision (6) or (7) of section 43-247 and the parent or custodian appears with or without counsel, the court shall inform the parties of the:
. . .
(b) Right to engage counsel of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer;
. . .

unconstitutional infringements upon her interest in her family relations. To the extent the Plaintiff likens a restraint upon personal movement to the wholly separate interest in the family relationship, the criminal law counterpart to the <u>Rooker-Feldman</u> doctrine [<u>i.e.</u>, the Supreme Court's holdings in <u>Heck</u> and <u>Edwards</u>] should apply to these proceedings.[13]

. . .

As in <u>Heck</u> and <u>Edwards</u>, the Plaintiff's challenge to the procedure of the termination hearings based upon due process principles is undeniably aimed at challenging the validity of the "sentence" imposed by the state court, i.e., the termination of her parental rights. There are no allegations that the "conviction or sentence" has been reversed on direct appeal, expunged by executive order, or declared invalid by a state tribunal authorized to make such determination. In fact, it was upheld by the highest court in the State of Nebraska.

(Filing 40, p. 11.)

A simple answer to this argument is that the right to effective assistance of counsel is not "purely" a criminal law or Sixth Amendment concept. A claim of ineffective assistance of counsel can also be based on the Fifth Amendment's Due Process Clause. <u>See</u> <u>Obleshchenko v. Ashcroft</u>, 392 F.3d 970, 971 (8th Cir. 2004) (deportation proceeding); <u>Nativi-Gomez v. Ashcroft</u>, 344 F.3d 805, 807 (8th Cir. 2003) (same). The Due Process Clause of the Fifth Amendment is textually identical to the Due Process Clause of the Fourteenth Amendment, and both proscribe virtually

---

[13] In <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994) the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." In <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997), the Supreme Court applied <u>Heck</u> in the context of a § 1983 claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits.

identical governmental conduct.  Carhart v. Gonzales, 413 F.3d 791, 795 n. 2 (8th Cir. 2005), petition for cert. filed, No. 05-380 (Sep. 23, 2005).

Indeed, in Bruner v. Dunning, 731 F.2d 527, 528 (8th Cir. 1984), the Court of Appeals affirmed a decision by this court in Bruner v. Nebraska, No. CV82-L-129, slip op. (D.Neb. June 30, 1983) (Urbom, J.), that denied on the merits an ineffective assistance of counsel claim in a § 1983 action in which the plaintiff claimed that her parental rights were terminated without due process of law.[14]  Judge Urbom found, and the Eighth Circuit agreed, that Bruner had failed to "show that her appointed counsel 'failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances' and that, as a result, she was 'materially prejudiced' in the defense of her claims in state court."[15]  731 F.2d at 528 (quoting United States v. McMillan, 606 F.2d 245, 247 (8th Cir. 1979)).  Consistent with Bruner, the Nebraska Supreme Court's decision in In re Interest of

_____

[14] The termination was set aside by the Nebraska Supreme Court, but that portion of the trial court's order placing continuing custody of Bruner's child in the Department of Public Welfare was affirmed.  See In re Interest of McKinzie, 323 N.W.2d 78, 80 (Neb. 1982).  In the § 1983 action, therefore, Bruner's ineffective assistance of counsel claim was analyzed with respect to her loss of custody.

[15] Specifically, Judge Urbom "found that counsel's failure to call certain witnesses was not prejudicial because it did not appear that the proposed testimony would have been relevant to the issue of Bruner's ability to provide for her son's special needs[;] . . . that although counsel's failure to discuss defenses may have been a breach of his duty to consult with Bruner, any resulting prejudice was merely unsupported speculation[;] . . . that any prejudice resulting from counsel's failure to warn her of the consequences of missing hearings was moot by virtue of the Nebraska Supreme Court's reversal of the juvenile court's decision to terminate her parental rights[;] . . . that Bruner failed to establish that counsel's failure to fully develop a plan for Bruner's resumption of custody was prejudicial in that she presented no evidence that counsel could have developed a viable plan[; and] . . . that counsel's failure to object to evidence appeared to be the result of tactical choices rather than a dereliction of duty."  Bruner, 731 F.2d at 528.

Joshua R. clearly recognized that Ramos's ineffective assistance of counsel claim was founded upon due process principles.

In the present action, Ramos likewise "seeks a declaration by this Court that the State of Nebraska violated her rights as secured by the Fourteenth Amendment to the United States Constitution, including her right to Due Process and Equal Protection of the Law." (Amended Complaint, ¶ 17.)  I have already held that the Rooker-Feldman doctrine precludes such a declaration with respect to Ramos's due process claim,[16] and, consequently, there is no need to explore whether Heck and Edwards might be extended by analogy to apply in this case.

### III.  CONCLUSION

This court does not have subject matter jurisdiction over the plaintiff's due process claim, and she has failed to allege an actionable equal protection claim.  Her action therefore will be dismissed with prejudice.

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss (filing 39) is granted, and that judgment shall be entered by separate document.

October 17, 2005.                                    BY THE COURT:

                                                    s/ *Richard G. Kopf*
                                                    United States District Judge

_____

[16] With respect to Ramos's invocation of the Equal Protection Clause, I have held that her amended complaint fails to state a claim upon which relief can be granted.  See note 10, supra.  Dismissal is therefore appropriate under Rule 12(b)(6).

23